HH Law Firm
Hani A. Habbas CSB 337016
7700 Irvine Center Dr., Suite 750
Irvine, CA 92618
Tel: (833) 359-6116
Email: hani@hhlawfirm.law

Attorney for Plaintiff *Jalen Wright*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JALEN WRIGHT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES; and DOES 1 through 10, inclusive,<br><br>Defendants, | Case No. 2:26-cv-00449-SRM (SSCx)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES:**<br>1. 42 U.S.C. § 1983 — Fourteenth Amendment (Deliberate Indifference to Serious Medical Needs);<br>2. 42 U.S.C. § 1983 — Fourteenth Amendment (Unconstitutional Conditions of Confinement);<br>3. 42 U.S.C. § 1983 — Monell Municipal Liability;<br>4. Failure to Summon Medical Care (Cal. Gov. Code § 845.6);<br>5. Negligence;<br>6. Professional Negligence (Medical Malpractice);<br>7. Intentional Infliction of Emotional Distress.<br><br>**DEMAND FOR JURY TRIAL**<br>Hon. Serena R. Murillo |

## INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 and California law arising from the deliberate indifference of Los Angeles County jail personnel to the serious medical needs of Plaintiff JALEN WRIGHT, a pretrial detainee held at the Twin Towers Correctional Facility.

What began as a treatable finger infection became, through days of ignored pleas and obstructed care, a surgically drained abscess that left Mr. Wright with permanent impairment.

2. Mr. Wright developed the infection in a filthy, mold-ridden cell with a dirty toilet and sink, no clean water, and soiled bedding. He told custody deputies his finger was swelling, reddening, and turning blue, black, and purple. He banged on his cell door in pain. For roughly four days, his repeated requests for care were met with the refrain that it would 'get better tomorrow.' When a clinician finally saw the obviously serious infection, Mr. Wright was sent to the jail hospital, where staff incised and drained the abscess — and then returned him to housing without the follow-up care the treating hospital expressly ordered.

3. The indifference did not stop there. After Mr. Wright sought help, deputies sealed his cell with a plastic barrier, forcing him to hang his arm out beneath it to be seen. On February 10, 2025, a Los Angeles Superior Court judge signed an order directing that Mr. Wright be transported to a hospital immediately for the infected finger. Defendants ignored the court's order, telling Mr. Wright that care was withheld because he was 'trying to get bailed out.'

4. Mr. Wright's injuries were the foreseeable product not only of individual misconduct but of the County of Los Angeles's longstanding, well-documented custom of delayed and denied medical care and unconstitutional conditions in its jails — failures so entrenched that, in September 2025, the People of the State of California sued the County, the Sheriff's Department, and Correctional Health Services over the very same practices, and a federal court has overseen the County's jail conditions for decades. Mr. Wright seeks compensatory and punitive damages, attorneys' fees, and all other relief available under federal and state law.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343, because those claims arise under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

6. This Court has supplemental jurisdiction over Plaintiff's California state-law claims under 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy, arising from a common nucleus of operative fact.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because all of the acts and omissions giving rise to Plaintiff's claims occurred in Los Angeles County, within the Central District of California, including at the Twin Towers Correctional Facility, 450 Bauchet Street, Los Angeles, California 90012.

**PARTIES**

8. Plaintiff JALEN WRIGHT is, and at all relevant times was, an individual residing in the State of California. He was arrested on or about January 7, 2025, and was held as a *pretrial detainee* at the Twin Towers Correctional Facility during the events alleged herein. Because Mr. Wright was a pretrial detainee and not a convicted prisoner, his federal claims for inadequate medical care and unconstitutional conditions arise under the Due Process Clause of the Fourteenth Amendment and are governed by an objective standard.

9. Defendant COUNTY OF LOS ANGELES (the 'County') is a public entity organized under the laws of the State of California. The County operates the largest jail system in the United States, including the Twin Towers Correctional Facility, through its departments and agents — principally the Los Angeles County Sheriff's Department ('LASD'), which is responsible for custody operations, and the County Department of Health Services, Correctional Health Services ('CHS'), which is responsible for medical and mental health care in the jails. LASD and CHS are operating departments of the County and are not sued as separate entities; the County is responsible for their acts and omissions. The County's final policymakers for the jails include the Sheriff of Los Angeles County (custody) and the Director of Correctional Health Services (medical care).

10. Defendants DOES 1 through 6 are LASD custody personnel — including deputies and custody supervisors assigned to Mr. Wright's housing locations (Module K-10 and, subsequently, the '271 module,' cell 3) during January and February 2025 — who received Mr. Wright's repeated requests for medical care, observed his visibly worsening infection, delayed and denied that care, maintained the unsanitary conditions of his confinement, and/or refused to comply with the court order directing his hospital transport.

11. Defendants DOES 7 through 10 are CHS physicians, clinicians, and nurses responsible for evaluating, treating, and arranging care for Mr. Wright's infection, who failed to timely evaluate him, failed to summon hospital-level care, and failed to provide the follow-up wound care and re-evaluation that the treating hospital ordered.

12. The true names and capacities of Defendants DOES 1 through 10 are presently unknown to Plaintiff, who will seek leave to amend to allege their true names and capacities once ascertained through discovery, consistent with the Court's order limiting the number of fictitiously named defendants. At all relevant times, each Doe Defendant acted under color of state law and within the course and scope of his or her employment with the County.

## COMPLIANCE WITH THE CALIFORNIA GOVERNMENT CLAIMS ACT

13. Plaintiff has satisfied all conditions precedent to his California state-law claims. On July 8, 2025, Plaintiff presented a timely written claim for damages to the County of Los Angeles, by certified mail to the Executive Officer of the Board of Supervisors, in compliance with Government Code sections 910 and 911.2. The County, through its administrator Sedgwick, assigned the claim Claim No. 6926 and County File No. 25-4431406.

14. By written notice dated and mailed July 18, 2025, the County rejected Plaintiff's claim. Plaintiff filed this action within six months of that rejection, in compliance with Government Code section 945.6. A true and correct copy of the rejection notice is attached as Exhibit 3.

## FACTUAL ALLEGATIONS

**A. Mr. Wright Develops an Infection in a Filthy Cell at Twin Towers.**

15. On or about January 7, 2025, Mr. Wright was arrested and booked into the custody of the Los Angeles County Sheriff's Department, and was housed as a pretrial detainee at the Twin Towers Correctional Facility, first in Module K-10 and later in the '271 module,' cell 3.

16. Mr. Wright's cell was unsanitary and unsafe. It contained visible mold, accumulated dirt and grime, a dirty toilet and sink, and only cold water; his bedding was soiled with hair and debris; he was at times provided no blanket and slept in only a gown; and he was not afforded consistent access to showers or basic hygiene. A neighboring incarcerated person who had an untreated staph infection warned Mr. Wright not to touch common surfaces because they were dirty.

17. On or about January 14, 2025, while confined in these conditions, Mr. Wright developed an infection on the finger of his left hand. Over the following days the finger became increasingly swollen and painful, and progressed in color from red to blue, black, and purple — an obvious and objectively serious medical condition.

**B. Custody Staff Ignore Mr. Wright's Repeated Pleas as the Infection Worsens.**

18. Mr. Wright repeatedly and verbally reported his condition to the custody deputies (Does 1 through 6) responsible for his housing, showed them his discolored and swollen finger, and asked to be taken for medical care. The deputies saw the obvious infection and nonetheless delayed and refused care, repeatedly telling Mr. Wright that it would 'get better tomorrow.'

19. In desperation and severe pain, Mr. Wright banged on his cell door to summon help. Meaningful medical evaluation was delayed approximately four days after his complaints began and despite his obviously worsening symptoms. A County facility provider initially prescribed only oral antibiotics and returned Mr. Wright to his cell; the infection continued to worsen.

20. When a CHS clinician (one of Does 7 through 10) was finally summoned to Mr. Wright's cell, the clinician observed the finger and a nurse stated that Mr. Wright needed to be sent to the hospital. Even then, custody staff delayed transport and continued to disregard Mr. Wright's requests to be taken to an emergency room.

21. After Mr. Wright sought medical attention, custody staff sealed his cell with a plastic barrier or covering, which isolated him and obstructed observation of his condition. To draw attention to the worsening infection, Mr. Wright was forced to hang his visibly infected hand out from beneath the barrier.

**C. The Hospital Drains an Abscess and Orders Follow-Up Care That the Jail Fails to Provide.**

22. On or about January 23, 2025, Mr. Wright was transported to LA General Medical Center. Emergency-department staff diagnosed paronychia with finger cellulitis, performed an incision and drainage of the abscess, and expressed purulent fluid from the finger.

23. Upon discharge, the treating hospital expressly directed that the jail continue twice-daily wound care, re-evaluate the finger and wound within 48 hours to ensure the infection was improving, and continue antibiotics — ideally in the jail infirmary. Defendants (Does 1 through 10) failed to provide the ordered 48-hour re-evaluation or adequate follow-up wound care. Instead, jail staff did no more than wrap the finger and continue antibiotics while the infection persisted and the finger failed to heal.

**D. Defendants Disregard a Judge's Order to Transport Mr. Wright to the Hospital.**

24. On February 10, 2025, in Los Angeles Superior Court (Pasadena Courthouse), Department 4, in *People v. Wright*, Case No. 24PDCF00350 (Booking No. 6939292), the Honorable Rupa S. Goswami signed a written medical order reflecting Mr. Wright's infected finger and directing him to be transported to a hospital immediately. A true and correct copy of the order is attached as Exhibit 1.

25. Despite this binding court order, Defendants failed to transport Mr. Wright to a hospital or to summon immediate hospital-level care. Defendants stated, in substance, that care was not provided because Mr. Wright was 'trying to get bailed out.' Defendants' refusal to provide court-ordered care was punitive and served no legitimate penological or medical purpose.

26. Defendants also subjected Mr. Wright to further punitive treatment after he sought care and complained, including threatening to withhold his food, denying him telephone access (including a call from his attorney), denying him showers, and repeatedly preventing him from being produced for his court appearances — on approximately seven occasions — such that his mother had to call a jail captain out of concern for his welfare. On or about May 16, 2025, Mr. Wright submitted an emergency inmate grievance regarding the repeated failures to produce him for court. A true and correct copy of the grievance is attached as Exhibit 2.

**E. Mr. Wright Suffers Permanent Injury.**

27. Only after his release from custody did Mr. Wright obtain adequate medical care, but by then the prolonged delay and inadequate treatment had caused lasting harm. Mr. Wright's finger remains stiff with limited mobility, and the fingernail no longer grows. He continues to suffer pain, scarring and decreased function, and emotional distress, the last of which was compounded by his pre-existing anxiety and depression, for which he was receiving medication while in custody.

**F. Mr. Wright's Injuries Resulted From the County's Documented Custom and Failure to Train and Supervise.**

28. The acts and omissions described above were not isolated. They were the foreseeable product of the County's longstanding, deliberately indifferent custom and practice of delaying and denying medical care to people in its jails and of confining them in unconstitutional, unsanitary conditions, and of the County's failure to train, supervise, and discipline its custody and health-care staff.

29. In 2021, the California Attorney General opened a civil-rights investigation into LASD and its jails. That investigation revealed systemic failures in the training and management of custody and health-care staff and concluded that Defendants 'fail to meaningfully train and supervise custody and healthcare staff to prevent violations and fail to discipline misconduct by staff.'

30. On September 8, 2025, the People of the State of California, by and through Attorney General Rob Bonta, filed suit against the County of Los Angeles, the Los Angeles County Sheriff's Department, and the County Department of Health Services, Correctional Health Services, over unconstitutional and inhumane conditions in the County's jails — the same entities and the same practices at issue here. That action, originally filed in Los Angeles Superior Court as Case No. 25STCV26152, was removed to this Court and is pending as *People of the State of California v. County of Los Angeles, et al.,* No. 2:25-cv-09765-MWF (Ex) (C.D. Cal.). Plaintiff will request that the Court take judicial notice of the complaint and First Amended Complaint in that action.

31. As alleged by the State, and as is true of Mr. Wright's experience, people incarcerated in the County's jails are forced to live in filthy cells with broken and overflowing toilets, vermin infestations, and no clean water; are denied basic medical care; and suffer preventable harm and death. The State alleges that more than 345 people died in the County's jails over approximately nine years, that nearly 38 percent of in-custody deaths between 2016 and 2025 were caused by preventable circumstances, and that thousands of incarcerated people — approximately 4,000 at one point — were on a waitlist for medical care due in part to chronic understaffing.

32. These conditions were specifically documented at Twin Towers — the facility where Mr. Wright was held — contemporaneously with his confinement. On March 6, 2025, inspectors from the Sybil Brand Commission for Institutional Inspections observed at Twin Towers multiple non-functioning toilets, mattresses lacking required covers, visible mold on the walls, and a trail of blood on the floor that had reportedly been present for weeks. The Sybil Brand Commission has described the County's failure to provide medical care in its jails as a 'humanitarian crisis.'

33. The County has been on notice of these unconstitutional conditions and care failures for decades, including through the long-running federal litigation and oversight of County jail conditions in *Rutherford v. Luna,* No. 2:75-cv-04000-DDP (C.D. Cal.), and through numerous consent decrees, monitoring reports, and oversight findings. Despite this knowledge, the County failed to implement adequate reforms, resisted oversight, and persisted in the customs and training and supervisory failures that were the moving force behind Mr. Wright's injuries.

## FIRST CAUSE OF ACTION

***42 U.S.C. § 1983 — Fourteenth Amendment: Deliberate Indifference to Serious Medical Needs***

***(Against Defendants Does 1 through 10)***

34. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

35. As a pretrial detainee, Mr. Wright had a clearly established Fourteenth Amendment right to constitutionally adequate medical care, governed by an objective standard of reasonableness.

36. Mr. Wright had an objectively serious medical need: a rapidly worsening finger infection with marked swelling, severe pain, and blue, black, and purple discoloration that progressed to an abscess requiring incision and drainage.

37. Each Defendant Doe made an intentional decision with respect to Mr. Wright's medical care and conditions of confinement. Does 1 through 6 (custody) knew of his serious medical need from his repeated reports, from the obvious appearance of the infection, from his banging on the cell door, and from the court's transport order, and they delayed and denied care, sealed his cell, and refused to comply with the court order. Does 7 through 10 (medical) knew of his serious need from their evaluation, the incision and drainage, and the hospital's discharge orders, and failed to summon timely hospital care and failed to provide the ordered 48-hour re-evaluation and follow-up wound care.

38. Defendants failed to take reasonable available measures to abate the substantial risk of serious harm to Mr. Wright, even though a reasonable official in their circumstances would have appreciated the high degree of risk involved — a risk that was obvious. Defendants' conduct was objectively unreasonable and was not justified by any legitimate governmental interest.

39. As a direct and proximate result, Mr. Wright suffered the progression of his infection, an avoidable surgical drainage, prolonged pain and suffering, permanent impairment of his finger, and emotional distress. Defendants acted with reckless and callous disregard for Mr. Wright's federally protected rights, entitling him to punitive damages against the individual Doe Defendants, and to attorneys' fees under 42 U.S.C. § 1988.

**SECOND CAUSE OF ACTION**

***42 U.S.C. § 1983 — Fourteenth Amendment: Unconstitutional Conditions of Confinement (Against Defendants Does 1 through 6)***

40. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

41. As a pretrial detainee, Mr. Wright had a Fourteenth Amendment right to humane conditions of confinement, governed by an objective standard.

42. The conditions of Mr. Wright's confinement — a cell with visible mold, a dirty toilet and sink, no clean water, soiled bedding, inadequate clothing and bedding, and the denial of consistent hygiene and showers — posed a substantial risk of serious harm, including the risk of infection.

43. Defendants Does 1 through 6 made intentional decisions regarding these conditions, knew or should have known of the substantial risk they posed (including from the presence of untreated infections among incarcerated persons in the same housing), and failed to take reasonable available measures to abate that risk. Their conduct was objectively unreasonable.

44. As a direct and proximate result, Mr. Wright contracted and suffered the worsening of a serious infection and the injuries alleged herein. Defendants acted with reckless and callous disregard for Mr. Wright's rights, entitling him to punitive damages against the individual Doe Defendants and to attorneys' fees under 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**

***42 U.S.C. § 1983 — Monell Municipal Liability (Against Defendant County of Los Angeles)***

45. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

46. The violations of Mr. Wright's Fourteenth Amendment rights were caused by the County's policies, customs, and practices, and by its deliberately indifferent failure to train, supervise, and discipline its custody and health-care personnel.

47. Custom and practice. The County maintained a longstanding custom and practice of (a) delaying and denying timely and adequate medical care to people in its jails, including by failing to summon hospital-level care for obvious and worsening conditions and by disregarding treating-provider and court medical directives; and (b) confining people in unsanitary, unsafe, and uninhabitable conditions. This custom was so widespread, longstanding, and well-documented as to constitute the County's de facto policy, as reflected in the Attorney General's 2021 investigation and pending enforcement action, the *Rutherford* federal litigation and oversight, the Sybil Brand Commission's findings (including its March 6, 2025 inspection of Twin Towers and its description of a 'humanitarian crisis'), the County's preventable in-custody death rate, and its chronic medical understaffing and care waitlists.

48. Failure to train and supervise. The County failed to adequately train and supervise its custody and health-care staff to recognize and respond to obvious and serious medical needs, to summon emergency care, to comply with court medical orders, and to maintain sanitary conditions. The need for such training and supervision was obvious, and the County's failure amounted to deliberate indifference to the rights of detainees, as the State itself alleges that Defendants 'fail to meaningfully train and supervise custody and healthcare staff to prevent violations and fail to discipline misconduct by staff.'

49. Ratification. The County's final policymakers for jail operations and jail medical care — including the Sheriff and the Director of Correctional Health Services — were aware of these unconstitutional customs and conditions for years and ratified them by failing to remediate them, failing to discipline the responsible personnel, and resisting reform.

50. The County's policies, customs, and failures to train, supervise, and discipline were the moving force behind, and the direct and proximate cause of, the violations of Mr. Wright's constitutional rights and his resulting injuries. Plaintiff seeks compensatory damages against the County and attorneys' fees under 42 U.S.C. § 1988. Plaintiff does not seek punitive damages against the County.

**FOURTH CAUSE OF ACTION**

***Failure to Summon Immediate Medical Care — Cal. Gov. Code § 845.6 (Against All Defendants)***

51. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

52. Defendants Does 1 through 10, while acting within the scope of their employment, knew or had reason to know that Mr. Wright was in need of immediate medical care, based on his repeated complaints, the obvious and worsening appearance of the infection, the statement of CHS staff that he needed hospital care, and the February 10, 2025 court order directing his immediate hospital transport.

53. Notwithstanding that knowledge, Defendants failed to take reasonable action to summon such medical care, including by delaying evaluation for approximately four days, refusing to transport Mr. Wright to an emergency room, and disregarding the court's transport order.

54. Under California Government Code section 845.6, the individual Defendants and the County (which is liable for the failure to summon care notwithstanding Government Code section 844.6, as expressly provided in sections 844.6(d) and 845.6, and is vicariously liable under section 815.2) are liable for the injuries proximately caused by this failure. As a direct and proximate result, Mr. Wright suffered the injuries and damages alleged herein.

**FIFTH CAUSE OF ACTION**

***Negligence (Against Defendants Does 1 through 10)***

55. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

56. Defendants Does 1 through 10, as public employees acting within the scope of their employment, owed Mr. Wright a duty to exercise reasonable care for his safety and health while he was in custody, including duties to respond reasonably to his serious medical needs, to summon care when required, and to maintain reasonably safe and sanitary conditions, consistent with applicable law and minimum jail standards.

57. Defendants breached those duties through the negligent acts and omissions alleged herein, including by ignoring and delaying response to Mr. Wright's obvious medical needs, failing to summon and provide appropriate care, and confining him in unsanitary conditions. Under Government Code section 820, each Defendant is liable for injury caused by his or her negligent or wrongful act or omission to the same extent as a private person; such liability is preserved by Government Code section 844.6(d).

58. As a direct and proximate result of Defendants' negligence, Mr. Wright suffered the injuries and damages alleged herein.

## SIXTH CAUSE OF ACTION

***Professional Negligence (Medical Malpractice) (Against Defendants Does 7 through 10 and the County of Los Angeles)***

59. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

60. Defendants Does 7 through 10, the CHS medical providers responsible for Mr. Wright's care, owed him a duty to exercise the degree of skill, knowledge, and care ordinarily possessed and exercised by members of their respective professions under similar circumstances.

61. These Defendants breached that duty of care by, among other things, failing to timely and adequately evaluate Mr. Wright's infection, failing to summon hospital-level care as his condition obviously worsened, and failing to provide the follow-up wound care and 48-hour re-evaluation expressly ordered by the treating hospital. The County is liable for the conduct of its medical employees as provided by Government Code sections 845.6 and 815.2.

62. As a direct and proximate result of this professional negligence, Mr. Wright suffered the progression of his infection, permanent impairment, and the other injuries and damages alleged herein.

## SEVENTH CAUSE OF ACTION

***Intentional Infliction of Emotional Distress (Against Defendants Does 1 through 10)***

63. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

64. Defendants Does 1 through 10 engaged in extreme and outrageous conduct, including ignoring Mr. Wright's obvious and worsening medical crisis, sealing his cell with a barrier after he sought help, refusing to comply with a judge's order to transport him for emergency care, withholding care because he was 'trying to get bailed out,' and subjecting him to punitive deprivations of food, telephone access, showers, and court appearances.

65. Defendants engaged in this conduct intentionally or with reckless disregard of the probability that Mr. Wright would suffer severe emotional distress, given his obvious medical condition and known vulnerability. The conduct exceeded all bounds of decency tolerated in a civilized community.

66. As a direct and proximate result, Mr. Wright suffered severe emotional distress and the other damages alleged herein. Defendants' conduct was malicious, oppressive, and in reckless disregard of Mr. Wright's rights, entitling him to punitive damages against the individual Doe Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JALEN WRIGHT prays for judgment against Defendants as follows:

a. For compensatory and general damages according to proof;

b. For special damages, including past and future medical expenses, according to proof;

c. For punitive and exemplary damages against the individual Defendants Does 1 through 10 only, in an amount sufficient to punish and deter;

d. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 1988 and all other applicable law;

e. For pre-judgment and post-judgment interest as permitted by law; and

f. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

67. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff JALEN WRIGHT hereby demands a trial by jury on all issues so triable.

Dated: June 25, 2026

HH LAW FIRM, APC

/s/ Hani Habbas

Hani A. Habbas, Esq.

Attorney for Plaintiff JALEN WRIGHT

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 7700 Irvine Center Dr., Suite 750, Irvine, CA 92618.

On June 25, 2026, I served the foregoing document(s) described as **FIRST AMENDED COMPLAINT FOR DAMAGES** on all interested parties in this action as set forth on the attached service list in the following manner:

☐ **BY CERTIFIED MAIL:** I am familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

☐ **BY FACSIMILE:** In addition to service by mail as set forth above, a copy of said document(s) was also delivered by facsimile transmission to the addressee(s) pursuant to Code of Civil Procedure §1013(e).

☐ **BY OVERNIGHT MAIL:** I caused said document(s) to be picked up via FEDERAL EXPRESS for delivery to the addressee(s) set forth on the attached service list on the next business day.

☐ **BY PERSONAL SERVICE:** I caused said document(s) to be delivered via personal delivery to the addressee(s) set forth on the attached service list.

☒ **BY ELECTRONIC SERVICE:** Pursuant to the agreement of the parties, I caused said document(s) to be delivered via electronic mail to the addressee(s) set forth on the attached service list.

☒ STATE: I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

mysoon afridi

☐ FEDERAL: I declare that I am employed in the office of the member of the bar of this court at whose direction the service was made.

Executed on June 25, 2026, at Irvine, California.

mysoon afridi

______________________

Mysoon Afridi

**SERVICE LIST**

nalan@mdglaw.net

mgonzalez@mdglaw.net

cmurphy@mdglaw.net

anuno@mdglaw.net